VAUGHN *v.* DOSSETT.

4-9571                                    243 S. W. 2d 565

Opinion delivered November 5, 1951.

Rehearing denied December 10, 1951.

*Neill Reed* and *R. W. Tucker,* for appellant.

*G. P. Houston* and *J. L. Bittle,* for appellee.

MINOR W. MILLWEE, J. This is a suit by appellees, J. B. Dossett and D. L. Dossett, father and son, against appellant, W. W. Vaughn, in which each side seeks to quiet its title as against the other to a forty acre tract of land in Cleburne County, Arkansas.

The preponderance of the evidence tends to establish the following facts: The land in question was formerly owned by C. A. Hockett. On June 11, 1934, Hockett executed a deed conveying the land to Jesse DeLoach who, on the same date, executed a mortgage back to Hockett to secure payment of the purchase price of $120, payable $20 annually beginning November 1, 1934. The deed from Hockett to DeLoach was never placed of record, but the mortgage executed by DeLoach was filed for record August 5, 1935.

DeLoach went into possession and constructed a two-room house on the tract from materials furnished by Hockett. He remained in possession until the latter part of 1936 when G. T. Carter began negotiations with Hockett and DeLoach to purchase the tract. DeLoach had paid none of the purchase price and, upon being approached by Carter, agreed to surrender his interest in the property and the deed from Hockett for $10. Carter paid this amount and DeLoach surrendered possession and the deed from Hockett which was returned to Hockett who executed a warranty deed to Carter on December 28, 1936. This deed was recorded December 30, 1936, and recited a consideration of $120, with $60 paid in cash and the balance payable $20 per year beginning November 1, 1937, and provided: "This deed to be good and clear when last note of the series is paid, or void upon failure of payment of any note of series." The record of this deed shows satisfaction of the indebtedness on April 29, 1947, by Lethyes Burnett as "legatee and devisee and sole beneficiary of the Ella Hockett and

C. A. Hockett estate.'' Marginal entry also shows satisfaction of the mortgage from DeLoach to Hockett by the latter on January 2, 1937.

The land forfeited to the state for the 1935 taxes while still in Hockett's name on the tax records and Carter redeemed from this sale on December 30, 1936. Upon receipt of the deed from Hockett, Carter and his son went into possession and remained on the land until the house was destroyed by tornado in 1938. The land remained on the tax records in DeLoach's name, but no taxes were paid thereon from 1936 to 1945. On November 11, 1946, appellees purchased the land at the annual collector's sale of lands delinquent for the taxes of 1945 and received a certificate of purchase. Hockett died in 1939.

On November 14, 1946, DeLoach, who then resided in Indiana, executed a quitclaim deed of the tract to appellant who filed the deed for record on November 25, 1946, and on the same date redeemed the land from the tax sale to appellees of November 11, 1946.

On May 2, 1947, G. T. Carter, who then resided in Missouri, executed a warranty deed to appellees who placed the deed of record May 5, 1947. Appellant paid taxes on the land for the years 1946, 1947 and 1949 while appellees paid the 1948 taxes. The land remained vacant and unoccupied until the instant controversy arose in 1949 when appellant began cutting and removing timber.

The chancellor found that DeLoach had no title or interest in the land when he conveyed by quitclaim deed to appellant in November, 1946, and that appellees had acquired title under the conveyance from Carter in May, 1947. A decree was entered cancelling the deed from DeLoach to appellant and quieting appellees' title to the land as against appellant upon payment to the latter of the sums expended by him for taxes.

Appellant earnestly insists that when he obtained the quitclaim deed from DeLoach in 1946, record title was in the latter as against Hockett by virtue of the

recorded mortgage from DeLoach to Hockett, which had been satisfied; that in order to transfer the record title back to Hockett it would have been necessary for DeLoach to execute a proper conveyance and place it of record, which was not done; and that the recorded deed from Hockett to Carter dated December 28, 1936, was ineffectual to constitute notice to appellant. Hence, appellant argues that he was an innocent purchaser for value and that the deed from Carter was ineffective to convey title to appellees who were bound to take notice of the record title at the time Carter acquired his deed from Hockett. Appellant is correct in his contentions unless his grantor, DeLoach, would have been estopped to deny the title of Carter and appellees are in position to claim the benefit of such estoppel. We agree that Carter's action in acquiring the unrecorded Hockett-DeLoach deed and in returning it to Hockett was ineffectual to transfer title, but the question remains whether, under this and subsequent actions of DeLoach and Carter, the latter was entitled to invoke estoppel as against the former and whether appellees, as purchasers from Carter, may rely thereon.

At the time appellant acquired the quitclaim deed from DeLoach the records disclosed the mortgage from DeLoach to Hockett and the satisfaction thereof. A prospective purchaser would readily have discovered the missing link in DeLoach's chain of title, since there was nothing of record to show how he acquired title to the land which he mortgaged to Hockett. A search of the deed records would have readily disclosed the deed of December 28, 1936, to Carter from Hockett, who was the grantor of both DeLoach and Carter. This should have put a prudent purchaser on inquiry as to the nature of Carter's interest in or title to the property.

The applicable rule is that if anything appears in an instrument in his chain of title that would put a prudent man on inquiry, the purchaser is charged with actual notice which he would have received had he pursued the inquiry with reasonable diligence. *Gaines* v. *Saunders*, 50 Ark. 322, 7 S. W. 301; Jones, Ark. Titles, § 102 and cases there cited.

In the opinion in *Gaines* v. *Saunders, supra,* Judge BATTLE said: "A person purchasing an interest in lands 'takes with constructive notice of whatever appears in the conveyances constituting his chain of title.' If anything appears in such conveyances 'sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and if he does not make it he is guilty of bad faith or negligence,' and the law will charge him with the actual notice he would have received if he had made it." (Citing authorities.)

The facts also bring the instant case within the rule of equitable estoppel repeatedly approved by this court and stated, as follows, in *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553: "The principle invoked is that a party who, by his acts, declarations or admissions, either deliberately or with willful disregard of the interests of another, induces him to conduct or dealings which he would not have otherwise entered upon is estopped to assert his rights afterwards to the injury of the party so misled." It is also well settled that the vendee, or grantee, of one estopped from claiming title is also estopped. *Allen* v. *Daniel,* 94 Ark. 141, 126 S. W. 384; *Straughan* v. *Bennett,* 153 Ark. 254, 240 S. W. 30. The rule is more broadly stated in *Mason* v. *Dierks Lumber & Coal Co.,* 94 Ark. 107, 125 S. W. 656, 26 L.R.A., N.S. 574, as follows: "With respect to the persons who are bound by or who may claim the benefit of the estoppel, it operates between the immediate parties and their privies, whether by blood, by estate or by contract." A privy in estate is one who takes title to the property in question by purchase or by conveyance. *Johnson* v. *Commonwealth Building & Loan Association,* 182 Ark. 226, 31 S. W. 2d 136.

We think DeLoach was clearly estopped by his conduct from asserting title to the forty acre tract as against Carter and that appellant, as DeLoach's grantee, is also estopped. After living on the land two years, DeLoach failed to pay the purchase price and voluntarily surrendered possession and the Hockett deed to Carter for

$10. It was further shown that he remained in the neighborhood some time after Carter went into possession and had knowledge of Carter's claim after he left the state. For a period of ten years he made no assertion of title to the land and had paid no taxes thereon when he executed the quitclaim deed to appellant in 1946. DeLoach would be estopped from claiming the title as against Carter, and appellees, as successors in title to Carter, are entitled to invoke estoppel as against appellant who is bound by the acts and conduct of DeLoach.

We cannot agree with appellant's assertion that the deed from Hockett to Carter was not in his chain of title. Appellant is not in the position of Turman in the case of *Turman* v. *Sanford*, 69 Ark. 95, 61 S. W. 167, upon which appellant relies. Appellant's grantor, De-Loach, had no claim of title except through Hockett who was also Carter's grantor.

The decree quieting appellees' title as against appellant and cancelling the deed from DeLoach to appellant is affirmed.

PAUL WARD, J., disqualified and not participating.