LOE *v.* HOPE OIL & GAS CO., INC.

5-1853                                                    328 S. W. 2d 74

Opinion Delivered September 14, 1959.

[Rehearing denied November 2, 1959]

*McKay, Anderson & Crumpler,* for appellant.

*Weisenberger & Wilson, Graves & Graves,* for appellee.

PAUL WARD, Associate Justice. On this appeal we are called upon to decide the merits of several conflicting claims growing out of an oil and gas lease on forty acres of land in Lafayette County. A skeleton outline of the factual background will help to understand the issues hereafter discussed.

Prior to November 27, 1954, the Hope Oil and Gas Company, Inc. (hereafter referred to as "Hope") was

the owner of an oil and gas lease on the land in question and on which land there was a producing oil well.

On the above named date Hope executed an assignment of said lease to one Al Johnson. The assignment appears to be absolute on its face but it is contended by some of the parties, including Hope, that said assignment was, in fact, an equitable mortgage. The assignment was filed for record December 1, 1954.

In September of 1955, Hope executed an assignment to each of several persons. These combined assignments conveyed 8/12ths of 7/8ths royalty interest on the land in question. All of these assignees will hereafter be referred to as the "Overtons." Some of the assignments were filed as early as September 27, 1955.

On October 22, 1955, Johnson executed to Bert Loe and Glen D. Loe, appellants herein, an assignment conveying to them a $12,000.00 oil payment for which the Loes paid Johnson the sum of $6,000.00. The said $12,000.00 oil payment was to be paid at the rate of $200.00 per month out of the working interest of the production from the land in question. The assignment further provided that the oil payment was not a personal obligation of Johnson and that the monthly payments would be made out of the first oil produced, saved and sold without cost or expense to the Loes, but Johnson warrants to defend the title in that he has the right and authority to make the conveyance. It also further provided that the oil payments were secured by a lien on the personal property, equipment and fixtures now on and which may hereafter be placed on said premises.

On October 28, 1955, Johnson executed an assignment to Hope conveying back to Hope the same oil and gas lease first mentioned above, SUBJECT, HOWEVER, to the said $12,000.00 oil payment in favor of the Loes. Also in this assignment back to Hope, Johnson excepted 1/16th of 7/8ths interest in favor of his wife and Wilmot McCain.

It should be noted that Hope's oil and gas lease and also all of the other assignments mentioned above are

subject to a 1/16th of 7/8ths overriding royalty interest owned by the Carter Oil Company and the same interest owned by L. J. Peters, which interests were created some years previously and are not involved in this lawsuit.

On January 24, 1956, Hope filed in Chancery Court a petition against Johnson and the Loes to remove certain clouds from his title.

(a) It was alleged that the assignment to Johnson referred to above was, in fact, an equitable mortgage, that it was given to secure a debt which he owed to Johnson in the amount of $7,500.00; that said amount had been re-paid to Johnson; and that, therefore, said assignment was now null and void.

(b) It was alleged that Johnson had no right or authority to assign the $12,000.00 oil payment to the Loes and that said assignment should be removed as a cloud on his title.

(c) It was further alleged that Johnson, in assigning the lease back to Hope, had no right to reserve the 1/16th of 7/8ths of the oil and gas lease in favor of Johnson's wife and Wilmot McCain but that same should be declared null and void. The prayer was in accordance with the above allegations.

Johnson, by his attorneys, answered the above petition stating:

(a) That Hope, by accepting the assignment from him on October 28, 1955, also accepted the provision which gave the $12,000.00 oil payment to the Loes, and that Hope is now estopped from denying the same.

(b) Further answering, Johnson says that if Hope refuses the claim under the above assignment that he is barred by the statute of frauds.

The Loes, represented by the same attorneys who represent Johnson, in their answer made the same claims as made by Johnson. The Loes further alleged that at the time they took the assignment of the $12,000.00 oil

payment they had no actual or constructive knowledge of the dealings between Hope and Johnson, and were, therefore, *bona fide* purchasers for value. By the way of cross complaint the Loes alleged that no money had been paid to them as required by the terms of the $12,-000.00 oil payment; that they are entitled to a judgment against the leasehold interest for all money due them; and that if said money is not paid within thirty days a receiver be appointed to operate said leasehold interest and to distribute the money.

Hope, in an amended complaint, stated that if the Loes' oil payments are found to be valid, then they ask judgment for $12,000.00 against Johnson or for damages against him because of non-operation of the oil well since 1955. Also, Hope, in replying to Loes' answer, stated that it had no knowledge of the assignment of the $12,000.00 oil payment to the Loes; and that while it accepted the assignment from Johnson it does not recognize the assignment of the oil payment to the Loes.

The Loes filed an amended and substituted cross complaint bringing the Overtons into the litigation, alleging that their rights under the oil payment assignment were superior to the rights of the Overtons.

The Overtons entered a general denial, asserting that the assignment of Hope to Johnson was, in fact, a mortgage; that there was no consideration for the assignment of the $12,000.00 oil payment to the Loes; that the reservation of the 1/16th of the 7/8ths interest to Mrs. Johnson and Wilmot McCain is void; and that the Loes and Hope are estopped from asserting any claim prior to theirs. By the way of cross complaint, the Overtons alleged that they are entitled to recover from Johnson the $8,000.00 which they paid for their assignments in the event said assignment is held to be void.

The trial court, after stating the facts, many of which have been set out above and after sustaining Loes' demurrer to Hope's complaint, decreed as follows:

(a) Hope's complaint and the amendments thereto and Loes' cross complaint and the amendments thereto are dismissed for the want of equity;

(b)   The assignment of the oil payment from Johnson to the Loes is cancelled and set aside;

(c)   The assignment from Johnson to Hope, dated October 28, 1955, is reformed so as to exclude any reference to and reservation of the said $12,000.00 oil payment;

(d)   The Overtons' title to 8/12th of 7/8ths working interest in said oil and gas lease together with all personal property, used or obtained in connection therewith, is quieted and confirmed in them (setting forth the interest of each individual as assignee), and said Overtons shall receive their interest in the production from the $SW\frac{1}{4}$, $SW\frac{1}{4}$, $NE\frac{1}{4}$ of said Section 13, cost free, until they have recovered the sum of $8,000.00. It appears also that the Overtons are granted a lien on the interest of Hope in said leasehold and personal property to guarantee the payment of the said sum of $8,000.00, and if Hope shall not begin operating said lease within sixty days and continue to operate it until the Overtons have received therefrom, free of cost, the sum of $8,000.00, then they may foreclose said lien on the interest of Hope.

(e)   The 1/32nd of 7/8ths overriding royalty interest reserved to Wilmot McCain and the same interest reserved to Mrs. Johnson is quieted and confirmed in them;

(f)   The balance of the leasehold (except the overriding royalty interest of the Carter Oil Company and L. J. Peters, aforementioned) is quieted and confirmed in Hope.

After a careful consideration of the entire matter, we have concluded that the basic question to be decided is whether appellants, the Loes, are innocent purchasers for value, and we have reached the further conclusion that the record before us shows them to be such. The findings of the trial judge show that he had a full and accurate grasp of the complicated factual situation and we agree with him on many of the conclusions which he reached therein. Most of these conclusions, however, were based on his determination of the basic question

mentioned above, and that is where we think he fell into error.

In the court's findings, reference is made to a letter which Johnson wrote on October 10, 1955, to the Overtons (actually it was written to their agent, Henson) wherein, among other things, he stated: ''The deal has gone through. In fact Mr. Davis has paid me for it and you will have possession as of the first of this month together with all the oil it is now making.''

Following this the trial court found: ''The defendant, Al Johnson, and his grantees, the Loes, are bound by said letter, and the sale to the Overtons, defendants, and to the plaintiff, Hope Oil and Gas Company, Inc., was paid for and consummated before the purported assignment of the oil payment to the defendants, Bert and Glen D. Loe;''.

In two respects we think the court was in error. First, we find that the assignment from Johnson to Hope was *not* consummated *before* the assignment of the oil payment to appellants. The record reflects that the former assignment was made October 28, 1955, while the latter assignment was made October 22, 1955. Secondly, while we agree that Johnson was bound by his letter, we do not agree it follows that appellants were bound by the letter, which, of course, was not a matter of record. That brings us now to a consideration of the principal or basic legal question involved, that is: Were appellants innocent purchasers for value?

Since the record reflects that Hope (the common source of title) assigned to Johnson and that Johnson assigned to appellants, and since it also reflects that appellants paid $6,000.00 for their assignment, it follows that appellants are innocent purchasers for value, unless (a) they had actual notice or (b) constructive notice of the previous assignment and reservations made by Johnson.

(a) We find nothing in the record which would justify us in holding that appellants had actual notice. In fact, there is nothing more than a suspicion that such

was the case. It is not significant that appellants paid only $6,000 for the $12,000 oil payment, because its true value depended largely on the success of an oil well which is usually a matter of speculation. Moreover, the burden to establish such notice was on Hope and the Overtons. See *White* v. *Moffett,* 108 Ark. 490, 158 S. W. 505, where the court, at Page 197 of the Arkansas Report, quoted: " 'When a party relies upon the defense of being a *bona fide* purchaser and shows that he has paid a valuable consideration, the burden of showing that he purchased with notice is upon the party alleging it or who relies on the notice to defeat the claim of the *bona fide* purchaser.' "

(b)   After a careful search of the authorities, in the light of the facts disclosed by the record here, we are driven to the conclusion that appellants did not have constructive notice of said assignment.

Hope and the Overtons forcefully call our attention to the facts that after Hope assigned to Johnson (while the record title was still in Johnson) it executed an assignment to the Overtons for which they paid $8,000 and further, that this was done with full knowledge and cooperation on the part of Johnson. Then, they rely strongly on the case of *Vaughan* v. *Dossett,* 219 Ark. 505, 243 S. W. 2d 565, (together with other authorities) for the proposition that appellants had constructive notice of the Overtons' assignment (which was of record), and that they are estopped because Johnson was (concededly) estopped. We do not agree, however, that the *Vaughan* case of any other citation offered sustains that view.

Although there are some isolated statements in the *Vaughan* case which appear to sustain appellees contention, we think a brief review of the essential facts in that case clearly indicate otherwise. Hockett was the common source of title from which Vaughan and Dossett each claimed; Hockett executed a deed August 5, 1955, to one Deloach which was never recorded, and on the same day Deloach gave Hockett a deed of trust securing the purchase price which was recorded; on December

28, 1936, Hockett, with Deloach's consent, deeded to one Carter who knew all the above facts; on November 14, 1946, Deloach quitclaimed to Vaughan; the next year Carter deeded to Dossett. This court held that Dossett's title prevailed over Vaughan's title although he received his deed before Dossett did. It appears to us that the essence of the decision is that when Dossett received his deed he was not charged with constructive notice of the deed from Deloach to Vaughan because it was not in his chain of title and conversely that Vaughan was charged with Hockett's deed to Carter because it *was* in his chain of title. The language in the opinion concerning estoppel was in reference to Vaughan and Deloach. Relating the facts of that case to those in the case under consideration, the Overtons stand in the position of Vaughan and appellants stand in the position of Dossett.

We cannot agree with appellees' contention that the assignment from Hope to Overtons was in the line of appellants' title and that it was constructive notice to them. The reason we do not agree is that Hope had already conveyed to Johnson when it conveyed to the Overtons, hence, their assignment was not in the line of appellants' title nor was it constructive notice to appellants. The law which we think applies in this situation is clearly stated in 92 C.J.S. at Page 260 where it is stated: ''A purchaser is required to search the records as against each prior owner of the property only for the time such prior owner had the title.'' The same principle is stated in different phraseology in 55 Am. Jur. at Page 1085 where it is said: ''Moreover, to require a purchaser to take notice of a prior deed or recitals therein, the deed must lie in the chain of title; that is, it must be such that if the title deed to support the grantors' title were produced it would disclose the deed in question.''

Since we have concluded that appellants had no actual or constructive notice of any of the prior conveyances of Hope or Johnson, and since they paid a valuable consideration for their oil payment, it follows that the cause must be reversed. Due to the fact that the interests

of several parties are involved and since it is important to all parties that the oil well be kept in operation, perhaps under the direction of the court, it is deemed advisable to remand the cause for further orders of the trial court. Also, in order to assist the trial court in its further orders and to avoid further unnecessary litigation we give it the benefit of these further findings and directions.

(a) For the same reasons that appellants prevail over the Overtons in priority they will also prevail over Ruby Cobb Johnson and Wilmot McCain in respect to their assignment from Johnson.

(b) As between the Ruby Cobb Johnson and Wilmot McCain assignment of a 1/16th interest they will be given preference over the Overtons because it appears to us that the Overtons had a much better opportunity to protect themselves than the said Johnson and McCain had. The Overtons knew when they took the assignment from Hope that it did not have the record title but that it was in Johnson. On the other hand there is no showing that said Johnson and McCain had any reason to think their assignment or reservation was not good.

(c) The Overtons are entitled to judgment against Johnson in the amount of $5,000.00 which he received from them through Hope. Whatever money they receive from the oil runs, subject to the rights of appellants and said Johnson and McCain, shall be applied as a credit on such judgment.

(d) Hope is not entitled to any interests from the proceeds in the lease until all other claims mentioned above, including the $8,000.00 paid out by the Overtons, have been fully paid.

We have not undertaken to decide if Hope is entitled to a judgment against Johnson as prayed for, but are leaving that matter for the further consideration and determination by the trial court. We are doing this for the reason that the record does not appear to be sufficiently developed for us to make a full determination, particularly in respect to the amount of the award, if any is made.

We deem it unnecessary to discuss other issues raised by the parties except to say that Hope, by further participation in the trial, waived its right to stand on its exception to the action of the trial court in overruling appellants' demurrer to its testimony.

Therefore, the decree of the trial court is reversed and the cause is remanded for further proceeding consistent with this opinion.

HARRIS, C. J., McFADDIN J., and ROBINSON, J., dissent.

ED. F. McFADDIN, Associate Justice, (Dissenting). The point to which I direct my dissent is the decision of the majority to allow the Loes to prevail over the Overtons. I am convinced that all of the equities are in favor of the Overtons. Their assignments were prior, both in time of execution and in time of recording, to the Loe assignments; and the Loes had notice of facts and circumstances which put them on inquiry, and they are bound by all the knowledge that such a reasonable inquiry would have disclosed. We have a long line of cases in Arkansas so stating such rule. See *Bland* v. *Fleeman*, 58 Ark. 84, 23 S. W. 4; *Waller* v. *Dansby*, 145 Ark. 306, 224 S. W. 615; *Jordan* v. *Bank of Morrilton*, 168 Ark. 117, 269 S. W. 53; and *Richards* v. *Billingslea*, 170 Ark. 1100, 282 S. W. 985.

Glen Loe was the only one of the Loes who testified. He said Johnson came to him in need of cash and offered to sell a $12,000 oil assignment for $6,000. Johnson had the assignment with him. Here is the record:

"Q. Who drew this assignment?

A. I don't know, sir.

Q. Did he just show up with an assignment there to you?

A. Yes, sir.

Q. And said 'I want $6,000 for this'?

A. Yes, sir.

Q. And you had never seen it or heard of it before?

A. I had heard of it, yes, sir.

Q. When did you hear of it?

A. Oh, probably that morning.

. . . .

Q. . . . . Anyhow you heard of it that morning and closed it during the day?

A. Yes.

Q. Without any effort to determine whether it was good?

A. Well, he told me that he had an oil payment for $12,000 and he would take $6,000 for it, and I had seen the equipment on his well, and I thought it was worth $6,000. And I didn't see how I could lose, because he incorporated the lien on it.

. . . .

Q. You say you have known Mr. Johnson a long time?

A. Yes, sir.

. . . .

Q. If you had come up to Lewisville or had your attorney come up here and check the record, he would have found these assignments to the Overton defendants which had been on record for over a month when you paid out this money or first heard of the deal?

A. I wouldn't know; I haven't checked the records till yet.

Q. You don't know yet?

A. No, sir.

Q. But if they were recorded in September you would have found them, wouldn't you?

A. If I had been looking for them I probably would.

Q. Or if your attorneys had been looking for them?

A. Yes, sir.

Q. Do you have an attorney?

A. Sure I have an attorney.

Q. Who?

A. Herrott and Ritchey.

Q. They are available to you at any time?

A. Yes, sir, they get $200 a month for looking after my business; I hope they are available.

Q. You expect them to?

A. Yes, sir.''

When we look at the $12,000 oil assignment from Johnson to Loe, we see that the instrument which Loe took specifically stated, ''It is understood that the payment of no part of said $12,000 is a personal obligation of the assignor herein but that said sum shall be due and payable to the said Bert and/or Glen D. Loe only out of 7/8ths of the first oil produced, saved, and sold''. I maintain that when a man comes in with an instrument already prepared reading like the foregoing and offers to sell $12,000 worth of oil for $6,000, the purchaser is put on notice that there is something ''fishy'' about the deal. In the normal course of business a man just does not sell $12,000 for $6,000. The very way in which the transaction was handled between Johnson and Loe was sufficient to put Loe on notice, and Loe has himself admitted that if he had pursued such notice he would have learned of the Overton assignments.

Under these facts and circumstances, I cannot see how the majority can overrule the Chancellor's finding of facts. He is what the Chancery Court found as regards the Loe assignment:

''. . . . that the said assignment above described from Al Johnson and wife to the Loes is null and void and should be cancelled and held for naught, and that all reference to, and the reservation of, said oil payment . . . is invalid . . . . and said assignment should be reformed to exclude any reference to said oil payment . . . .''

The Chancellor saw the people who testified. Glen Loe and Johnson were the only two people who testified

as to the good faith of the Loes. They were both interested parties and their testimony stands contradicted as a matter of law. The Chancery finding, as previously copied, shows the Chancellor's reaction. I maintain that when Glen Loe made the admissions and testified as he did the Court was justified in believing that he shut his eyes to material facts of which he had notice. The Trial Court was justified in holding that the equities were in favor of the Overtons; and the Chancery decree should be affirmed.