## Roy CUMMINGS *v.* Norma SHULTS

CA 04-498                                        207 S.W.3d 572

Court of Appeals of Arkansas
Opinion delivered April 27, 2005

*Warner, Smith & Harris, P.L.C.*, by: *Jason T. Browning*, for appellant.

*Shannon Foster*, for appellee.

KAREN R. BAKER, Judge. This is a boundary-line dispute. Appellant Roy Cummings appeals from the judgment of the Crawford County Circuit Court finding that he was estopped from proving either a boundary by agreement or by acquiescence. The trial court also quieted title to the disputed parcel of land in appellee Norma Shults. Finding no error, we affirm.

The Shults property is located to the north of the Cummings property. The dispute is whether the parties agreed that a ditch or tree line, located on Shult's property, would be the boundary between them, instead of the true boundary, located a few feet to

the south. Charles Palmer once owned all of the land in dispute before selling it to Cummings in two transactions. The property now owned by Cummings was conveyed to him in June 1975. Palmer conveyed the land now owned by Shults to Cummings in March 1977. Both conveyances were made with reference to a 1974 survey performed by Clovis Satterfield for Palmer. Cummings conveyed one tract of the property to Shults in April 1988, subject to a mortgage. A survey was not made at the time of that conveyance. After the final payment was made, a dispute arose when Shults had the property surveyed in order to fence the property.

Shults filed a petition to quiet title, alleging that Cummings misrepresented the boundary line between the two parcels and that, after a survey was conducted, she discovered the true boundary. Cummings answered, admitting the parties' ownership of their respective parcels of land but denying the other allegations of the petition. Cummings also filed a counterclaim, alleging that a boundary by acquiescence had been established.

At trial, Shults testified that, at the time of her purchase in 1988, she and Cummings walked the property, and Cummings pointed out a ditch or tree line as the boundary line. She admitted that the description in the 2001 survey contained 9.73 acres, while the description in her deed contained 8.67 acres. Shults testified that she did not recall any agreement that the boundary line would be located as Cummings pointed out or that it was discussed at closing. She stated that neither party believed that a survey was necessary at the time. Shults admitted that Cummings used the property up to the ditch line or tree line from April 1988 to 2001. She stated that she did not object to Cummings's use of the disputed tract because Cummings said that it was his property. She also did not think that she owned the property until she paid off the mortgage.

Casey Whitehouse, Shults's son, testified that he was not aware of the details of the transaction by which his mother bought the property. He stated that, when he moved onto the property in approximately 1991 or 1992, Cummings told him that the boundary line was in the area of the ditch line or tree line. Whitehouse testified that he was surprised that the survey showed the property extending further south than he expected. He stated that Cummings was not happy with the results of the survey and told him the survey was wrong. He discussed being present at a conversation between his mother and Cummings during which Cummings said

that they could build the fence by the ditch line. He said that he told Cummings to get his own survey and that Cummings responded that the survey was probably correct. He also denied agreeing with Cummings's proposal to build the fence along the ditch line. He admitted that the deed references the 1974 survey. He also admitted that he had never objected to Cummings's use of the property up to the tree line because Cummings told him that the boundary was near that line.

Charles Palmer, the former owner of all of the property in dispute, testified that, when he owned what is now Shults's tract, he discussed the boundary with Cummings and pointed out that the actual boundary was south of the ditch or tree line. He stated that he told Cummings that he could use the land up to the tree line for the time being but that it would go back to the actual boundary if he (Palmer) ever sold that tract. He said this conversation occurred prior to the time he sold the Shults tract to Cummings and that Cummings was aware that the tree line was not the boundary line. Palmer stated that he thought the tree line was within twenty feet of the actual boundary and that it was his intention to convey the property with the southern boundary twenty feet south of the tree line. He also stated that he believed that the descriptions in the deeds to Cummings were the same as the descriptions in the 1974 survey. Palmer also recalled that, when he discussed the boundary with Cummings, there were survey markers, but he did not recall the distance between the markers and the tree line.

Cummings testified that his understanding of the boundary line between Shults's property and his was that the line ran about fifteen feet south of the ditch. He stated that he recognized the tree line as the boundary and that no one ever objected to his use of the property up to the tree line. Cummings stated that he maintained the property up to the tree line by cutting hay some fifteen to eighteen times between 1988 and 2001.

Cummings testified that he walked the property with Shults and explained that the boundary line was fifteen feet south of the ditch line but that he had always used the ditch as a boundary. He testified that Shults agreed to the use of the ditch as the boundary and that they further discussed the matter at closing. He also testified that he explained to Shults that Palmer conveyed the line fifteen feet south of the ditch.

Cummings stated that the 2001 survey was not accurate and that he never agreed that it appeared accurate. He also stated that

the conversation Palmer described in his testimony was the same conversation during which he and Palmer agreed to use the tree line as the boundary. He denied needing another survey because he had a survey and knew where the true lines were. Cummings agreed that he sold Shults 8.65 acres but said that, if the 8.65 acres extended south of the tree line, it would not be Shults's property. He denied having any intent to misrepresent the boundary to Shults. He also stated that he did not know if Whitehouse did not object to his using the property to the tree line because he (Cummings) told him that was where the boundary was.

Clovis Satterfield, the surveyor, stated that the deed from Cummings to Shults referenced his 1974 survey. He also stated that, in 2001, Whitehouse wanted him to mark the boundary line and make a plat. He admitted that, although the two surveys began from the same section corner, some of the distances and calls were different because the second survey started its description at a different point and this was an error on the part of the draftsman. He stated that, when a call is to the center of the road or the center of the bridge, a surveyor measures to that point, even if the distance is different from that called for in the deed. He also stated that the road may have been moved some small distance. He admitted that he did not find any of the corners from the 1974 survey and had to reset those corners and that they may not have been replaced in exactly the same spot. He did not think that the 1974 survey was inaccurate, nor did he think that the 2001 survey was inaccurate. He stated that the extra acreage contained in the 2001 survey can be explained by the extra length between the point of the beginning and the center of the county road.

The trial court issued a letter opinion finding that Shults had not acquiesced in the establishment of a boundary. The court also found that Cummings was trying to testify in a manner in derogation of his deed to Shults. The court then quieted title to Shults according to the 2001 survey. An order was entered in accordance with the letter opinion. This appeal followed.

Cummings raises three points on appeal: that the trial court erred in not finding that a boundary by acquiescence existed between the parties; that the assertion of the "clean hands" doctrine is not applicable and should not be considered; that the trial court erred in not finding a boundary by agreement. We find the second point dispositive and pretermit any discussion of the other points.

The location of a boundary line is a question of fact, and this court will affirm a trial court's finding of the location of a boundary line unless the court's finding is clearly erroneous. *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Hedger Bros. Cement & Materials v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000).

In his second point, Cummings argues that the "clean hands" doctrine has no application in boundary disputes. The trial court did not mention the "clean hands" doctrine in his letter opinion. Instead, we believe that the trial court was actually applying estoppel by deed, which has long been recognized by Arkansas courts. Estoppel by deed bars one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed, or from denying the truth of any material facts asserted. *Haynes v. Metcalf,* 297 Ark. 40, 759 S.W.2d 542 (1988); *Vaughn v. Dossett*, 219 Ark. 505, 243 S.W.2d 565 (1951). A grantor is estopped to assert anything in derogation of his deed; thus, a specific recital in a deed, to the effect that the grantor has title to or that he is in possession of the land conveyed, will estop him from asserting the contrary as against the grantee. *Turner v. Rust*, 228 Ark. 528, 309 S.W.2d 731 (1958). It is well established that a grantor cannot dispute the existence of the property mentioned in his conveyance. *Bass v. Willey*, 216 Ark. 553, 226 S.W.2d 980 (1950). In *Vaughn v. Dossett, supra,* the supreme court applied the doctrine and estopped the grantee, who was a subsequent grantor, from changing the terms of a previous deed and mortgage when he knew he was attempting to act in derogation of the previous deed. Here, Cummings admitted that he knew Palmer conveyed the true boundary fifteen to twenty feet south of the tree line.

The evidence is undisputed that Cummings used the land up to the ditch/tree line without objection from 1988 until early 2001. However, the trial court refused to find a boundary by acquiescence because Cummings was attempting to claim a boundary different from that in his conveyance to Shults. Cummings conveyed the property to Shults with specific boundaries stated. He also told Shults and her son that the boundary line lies somewhere other than as described in the deed. Under these

circumstances, it would be inequitable to allow Cummings to assert that, because Shults and her son did not object, a boundary by acquiescence was created. Likewise, the only "agreement" concerning the boundary line was allegedly made at the time Cummings was conveying the property to Shults. Therefore, Cummings is estopped and cannot assert that the boundary is other than as described in his deed. The cases cited by Cummings in support of his argument on this point, *Disney v. Kendrick*, 249 Ark. 248, 458 S.W.2d 731 (1970), and *Jennings v. Burford, supra*, do not discuss estoppel.

Because we affirm the trial court's application of estoppel by deed, we need not discuss Cummings's arguments concerning either a boundary by acquiescence or a boundary by agreement.

Affirmed.

GLOVER and VAUGHT, JJ., agree.