2009 Ark. App. 854

**Bethel ACUFF, Appellant,**

v.

**Donald V. BUMGARNER, Mildred Bumgarner, and Donald W. Bumgarner, Appellees.**

**No. CA 09–269.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

---

The Kester Law Firm, by: Charles M. Kester and Dawn C. Egan, Fayetteville, for Appellant.

Benson & Wood, PLC, by: Joe Benson, Fayetteville, for appellees.

JOSEPHINE LINKER HART, Judge.

In this family land dispute, appellant Bethel Acuff appeals from a summary judgment entered in favor of her brother, appellee Donald Bumgarner.[1] The summary judgment effectively granted Donald approximately 478 acres of land in Madison County that had once been owned by his and Bethel's parents, Frank and Mary Bumgarner. Bethel appeals and argues that (1) the circuit court failed to give effect to a Kansas probate court's disposition of the property, which she contends would have vested half of the property in her; (2) Donald should be estopped from taking positions contrary to the representations he made in the Kansas proceedings; (3) factual issues exist as to Donald's purported ownership of the property; and (4) her claims are not barred by the statute of limitations, the statute of frauds, or other defenses. Because genuine issues of material fact remain to be decided and because further factual development is needed on some issues, we reverse and remand.

## I. *Factual Background*

We view the facts in a light most favorable to Bethel, as the party resisting the motion for summary judgment. *Howard v. Adams*, 2009 Ark. App. 621, 332 S.W.3d 24. Frank and Mary Bumgarner had three children: Donald, Virgil, and the youngest, Bethel, who was born in 1927. In the 1950s and 1960s, Frank and Mary acquired joint ownership of five tracts of land in Madison County containing a total of more than 400 acres. In addition, Frank acquired forty acres in his own name via a grant from the U.S. Bureau of Land Management.

On January 16, 1967, Frank, who was then a Kansas resident, drafted his last will and testament. The will named Donald and Virgil as executors and devised a life estate in all of Frank's property, including his realty, to Mary with "the understanding being that she shall enjoy all of the rents, income, use and profits therefrom, during the term of her natural life, and she shall have the power to sell any of said property as may be necessary to maintain her during her lifetime." The will further provided that, after Mary's death and payment of her debts and final expenses, all of the property remaining in Frank's estate would vest equally in Donald, Virgil, and Bethel. The will also contained a provision, signed by Mary, in which she "consented" to the will and "accept[ed] the provisions therein made for me in lieu of the rights secured to me by Statute."

Frank died on June 29, 1972, and Donald and Virgil submitted the will for probate in Kansas. They filed an estate inventory, which recited that Frank held a "1/2 interest" in the five Madison County tracts that he owned jointly with Mary. Based on that representation, the Kansas court's final settlement stated that Frank owned "an undivided one-half interest" in the five jointly held tracts, despite the fact that he and Mary had acquired the tracts as husband and wife and thus owned them as tenants by the entirety with the right of survivorship. *See generally Cloud v. Brandt*, 370 Ark. 323, 259 S.W.3d 439 (2007); *Lowe v. Morrison*, 289 Ark. 459, 711 S.W.2d 833 (1986). The court then declared that, under the terms of Frank's will, Mary was a devisee of a life estate in Frank's one-half interest in the five tracts (and his full interest in the sixth tract),

---

1. The summary judgment was also entered in favor of Donald's wife and son, appellees Mildred and Donnie Bumgarner. For the sake of clarity, we will refer to Donald as the sole appellee.

with the power of sale, and that, after Mary's death, the remainder of that property would go to Donald, Virgil, and Bethel equally.

On March 6, 1975, shortly after the Kansas proceedings were closed, Mary deeded to Donald three of the Madison County tracts that she had jointly owned with Frank, consisting of 338 acres. According to Donald, Mary deeded the property to him in exchange for his promise to care for her in the last years of her life. The deed stated that Mary granted Donald a fee-simple interest in the property and that she made the grant as the widow of Frank Bumgarner and "a survivor of a tenancy by the entirety." According to Bethel, she was unaware of the deed, and Donald led her to believe that she continued to be a one-third heir to the Arkansas property.

Mary died on November 29, 1979. Although she had executed a will on March 6, 1975, devising all of her property to Donald, the will was never probated. Donald would later say that Mary's 1975 conveyance to him of three tracts of the Arkansas property rather than all six tracts was an oversight, and, in 1999, he sought deeds from Bethel and Virgil on the three remaining tracts. Bethel and Virgil signed deeds to Donald in 1999 and 2000, conveying their interests in the three remaining tracts and thereby giving Donald apparent ownership of all six parcels of Arkansas property.

After Virgil died in 2005 without spouse or issue, Bethel claimed that she and Donald, as surviving siblings, each owned a one-half interest in the Arkansas properties. However, Donald asserted full ownership of the properties by virtue of his deeds. As a result, Bethel attempted to open an ancillary administration of Frank Bumgarner's estate in Madison County Circuit Court, Probate Division, for the purpose of distributing the Arkansas prop-

erty. However, the probate court ruled that Bethel's request was untimely and dismissed her petition. Bethel then filed the present action on August 2, 2007, in Madison County Circuit Court, Civil Division. She asked the court to quiet title to her in one-half of the Arkansas land; to impose a constructive trust or a resulting trust in her favor based on Donald's false representations in acquiring the property and his failure to distribute a proportional share to his siblings; and to hold Donald liable for fraud and breach of fiduciary duty, based on his misrepresentations to her about the nature of her deed and his knowledge of Virgil's incapacity at the time he signed his deed. Both Donald and Bethel filed motions for a judgment on the pleadings, which the circuit court treated as cross-motions for summary judgment.

In Donald's motion, he argued that the Kansas court's distribution of the Arkansas property was void. He asserted that Frank and Mary owned five of the Arkansas tracts as husband and wife and, therefore, when Frank died, those properties did not pass through Frank's estate but vested in Mary as a surviving tenant by the entirety. Thus, Donald asserted, his deed from Mary conveying three of the five tracts was valid. Donald also argued that (1) the Kansas court had no jurisdiction to determine ownership of Arkansas realty; (2) he did not commit fraud in acquiring Bethel's and Virgil's interests in the three remaining tracts; and (3) Bethel's claims were barred by the statute of frauds, the statute of limitations, res judicata, and estoppel by deed. Attached to his motion were, *inter alia,* the many deeds, wills, and other documents previously mentioned in this opinion; his affidavit denying any misrepresentations to Bethel and denying that Virgil was incompetent; and an affidavit from Dr. Ivan Box stating that Virgil was not incapaci-

tated when he signed his deed to Donald in 2000. In Bethel's motion, she argued that the Kansas probate court's disposition of Frank's interest in the Arkansas tracts should be given full faith and credit and a res judicata effect. She also claimed that Donald was estopped to argue that the Arkansas property passed outside of Frank's estate, given his representations in the Kansas proceeding that the property was a part of Frank's estate. Additionally, she asserted that Donald committed fraud and breach of fiduciary duty in procuring the deeds from her and Virgil. She attached to her motion the orders, petitions, and other documents from the Kansas proceedings, and an affidavit with supporting documents stating that Virgil had been adjudged incompetent when he signed his deed; that Donald was acting as Virgil's court-appointed guardian at the time the deed was executed; that she suffered from macular degeneration and could not read her deed; and that Donald told her that her deed was merely a logging easement over the three tracts.

On December 22, 2008, the circuit court made the following ruling:

> The plaintiff [Bethel] has requested that this Court find that the order of a probate court in the State of Kansas, rendered over thirty (30) years ago, should not be given effect. The Court finds that, for the reasons stated in the briefs filed by [Donald], the request is barred by estoppel, res judicata, the statute of frauds, lack of jurisdiction, laches, and other reasons argued in [Donald's] brief. The Court finds that summary judgment should be and hereby is granted in favor of [Donald].

Bethel appeals from that order.

## II. *Kansas Proceedings*

Bethel argues first that the Kansas court resolved the ownership of Frank's one-half interest in the five jointly *owned* tracts of Arkansas property by distributing it to Mary for life and then to the three children equally, and that the court's orders should be accorded full faith and credit and a res judicata effect. She argues further that Donald, having facilitated and acquiesced in the Kansas court's distribution, should not be heard to make an argument now that the property should never have passed through probate. Donald contends that the Kansas court simply had no jurisdiction to determine the ownership of Arkansas lands.

Donald's general statement of the law is correct as far as it goes. Our courts have recognized that a foreign state's probate judgment is not entitled to full faith and credit or a res judicata effect on matters pertaining to a decedent's Arkansas realty. *See Estate of Torian v. Smith*, 263 Ark. 304, 564 S.W.2d 521 (1978); *Ferguson v. Ferguson*, 2009 Ark. App. 549, 334 S.W.3d 425. However, this statement of the law does not resolve the underlying issues presented herein. We are not faced with a situation in which a foreign court is attempting to invade the province of an Arkansas court. Rather, we have a case in which the parties have taken certain actions and made certain representations regarding these parcels of Arkansas land, and it matters not that their actions and representations occurred outside of our borders. The issue is, what is the effect of those actions and representations on the ownership of the property? As noted below, material questions of fact remain to be decided on that issue.

First, a fact-finder, though not required to do so, could determine that the evidence established a decision by Mary and the children to forego Mary's tenancy by the entirety in the five Arkansas parcels in favor of allowing part of that land

to pass through Frank's estate. According to Bethel, the Kansas probate order reflected an agreement among Mary and the three children that Mary would have use of the Arkansas property during her lifetime, after which the property would be divided equally among the children. Additionally, Mary consented to the terms of Frank's will. The right of survivorship in a tenancy by the entirety may be dissolved by a party's voluntary action. *See Lowe, supra.* Under the circumstances of this case, there is room for a difference of opinion as to the effect and meaning of Mary's consent and any purported agreement regarding the disposition of the property. Summary judgment is therefore inappropriate. *Holliman v. Liles,* 72 Ark. App. 169, 35 S.W.3d 369 (2000).

Additionally, a fact-finder could conclude that Donald is judicially or equitably estopped from asserting, contrary to his representations in the Kansas probate proceeding, that Mary maintained unfettered ownership of the five jointly owned Arkansas tracts. Judicial estoppel occurs when the following elements are present: (1) a party must assume a position clearly inconsistent with a position taken in an earlier case or with a position taken in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Dupwe v. Wallace,* 355 Ark. 521, 140 S.W.3d 464

(2004); *Howard, supra.* Equitable estoppel, which may involve inconsistent positions taken outside of litigation, is similarly based on the inherent unfairness of permitting a party to take inconsistent positions and thereby benefit from them. *Dupwe, supra.* In particular, a party should not be allowed to accept the benefit of a judgment or decree then question its validity or oppose the enforcement of its terms. *Id.*

As the executor of Frank's estate, Donald informed the Kansas court that Frank owned a one-half interest in the five tracts of Arkansas property and that Frank's interest in that property should pass through his estate. Donald now takes the wholly inconsistent position that the five tracts did not pass through Frank's estate but remained in Mary's ownership as a surviving tenant by the entirety. Whether Donald's change of position is made for the purpose of manipulation or constitutes an inherent inequity are questions for a fact-finder to decide. When factual questions remain on estoppel issues, summary judgment is inappropriate. *See Lewis v. Crelia,* 365 Ark. 330, 229 S.W.3d 19 (2006); *Howard, supra.*

Likewise, factual questions remain on other matters. For instance, Frank's will gave Mary the power to sell the Arkansas property for her own maintenance. If Mary's deed to Donald fell within this provision, it could be considered a valid conveyance. We make no ruling on this issue, but simply point out another area in need of further factual development and resolution in this case. At this juncture, summary judgment is not proper.[2]

2. Bethel also argues that the circuit court misunderstood the issues in the case, as evidenced by its erroneous statement that Bethel was asking that the Kansas order *not* be given effect. Because we are reversing on other grounds, we need not address this issue. We observe only that the court did mischaracterize Bethel's position with regard to the Kansas order. If the court truly labored under a misconception, we are certain it will be cleared up on remand.

### III. *Factual Questions Regarding Bethel's and Virgil's Deeds*

In 1999 and 2000, Bethel and Virgil deeded their interests in the three remaining tracts of Arkansas land to Donald. Bethel contends that the deeds were procured by fraud, undue influence, or breach of fiduciary duty. On appeal, she asserts that summary judgment was improper because material questions of fact remain on these issues. We agree.[3]

In Bethel's affidavit, she asserted that she suffered from macular degeneration when she signed her deed to Donald. Medical records supported her claim of vision difficulties. She also asserted that Donald knew that she could not read and that he told her that she was only signing a logging easement across the property. According to Bethel, she had long trusted Donald to help her with documents and other matters that she had problems with due to her eyesight. Donald testified in a deposition that a third party's desire for an easement prompted his acquisition of the deed from Bethel. However, Donald denied any fraud in connection with the conveyance and stated that Bethel knew of Mary's desire that he have all the Arkansas property. He also offered an affidavit from notary Tonja Smith, who said that Bethel knew she was signing a warranty deed as grantor and that Bethel did not sign the deed at her home, as she had previously stated.

■ These matters constitute factual questions that could affect the validity of Bethel's conveyance to Donald. In her complaint, Bethel sought a constructive trust based on Donald's actions surrounding the deed. A constructive trust may be imposed where a person holding title to

property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005). The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty; or wrongful disposition of another's property. *Id.* The question of whether Donald acquired Bethel's deed by fraud or breach of fiduciary duty is a factual one, given the conflict in the evidence. *See generally Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). Summary judgment therefore should not have been granted. *See Ellis v. State Farm Bank*, 2009 Ark. App. 569, 2009 WL 2877636.

■ Bethel also presented evidence to support her claim that Virgil was mentally incompetent when he signed his deed to Donald on March 1, 2000. If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. *Donaldson v. Johnson*, 235 Ark. 348, 359 S.W.2d 810 (1962). Whether Virgil had such capacity is a question of fact in this case. He was adjudicated incapacitated by a Kansas court on May 19, 1999, after a doctor opined that he was "unable to make decisions regarding his health or his business affairs." Though Donald stated in his affidavit that Virgil was competent when he signed the deed, it is undisputed that Donald was aware of the incompetency proceedings in Kansas. In fact, the court

---

**3.** Even though Bethel and Donald filed cross-motions for summary judgment, the court was not prohibited from denying summary judgment if material fact issues remained. *See Millwood–RAB Mktg., Inc. v. Blackburn*, 95 Ark. App. 253, 236 S.W.3d 551 (2006).

appointed Donald as Virgil's guardian on May 19, 1999, long before the deed was signed. Additionally, Donald stated in his deposition that Virgil suffered from dementia and forgetfulness, and he expressed concern to his lawyer about Virgil's "being incompetent" when it was time to sign the deed. These evidentiary conflicts, along with a situation in which a guardian acquired a deed from a ward, raise the twin specters of incapacity and undue influence—issues to be resolved by a fact-finder. *See generally Yarbrough v. Moses*, 223 Ark. 489, 267 S.W.2d 289 (1954); *Hooten v. Jensen*, 94 Ark. App. 130, 227 S.W.3d 431 (2006).

Donald argues that the doctrine of estoppel by deed bars Bethel's claims under this point, but that doctrine is not applicable here. Estoppel by deed prohibits one party to a deed and his privies from asserting, as against the other party and his privies, any right or title in derogation of the deed, or from denying the truth of any material facts asserted. *Cummings v. Shults*, 91 Ark. App. 48, 207 S.W.3d 572 (2005). Under this doctrine, a grantor is estopped to assert anything in derogation of his deed; thus, a specific recital in a deed, to the effect that the grantor has title to or that he is in possession of the land conveyed, will estop him from asserting the contrary as against the grantee. *Id.* In this case, Bethel does not challenge her recitals in the deed or her title to the land conveyed. Rather, she asserts that the deed was procured by fraud. That assertion may be made without violating the doctrine of estoppel by deed. *See* 28 Am.Jur.2d *Estoppel & Waiver* §§ 8, 10 (stating that estoppel by deed does not apply where the grantor lacks capacity or where the deed was obtained by artifice).

Donald also contends that Bethel's argument on this point is barred by the doctrine of after-acquired title. Though Donald's argument is difficult to follow, he appears to say that, when Bethel deeded her interest in the three remaining tracts to Donald, she effectively deeded Virgil's interest as well because she "acquired" Virgil's interest "after" Virgil died. However, Donald misapplies the after-acquired-title doctrine. After-acquired title becomes relevant when a person conveys a deed to lands he does not yet own but later acquires. *White v. Cordes*, 14 Ark. App. 104, 685 S.W.2d 524 (1985). In the present case, Bethel and Virgil both owned their interests in the tracts at the time they conveyed them to Donald, and there was no need to "bolster" their deeds by after-acquired title.

## IV. *Defenses*

The circuit court ruled that Bethel's claims were barred by various defenses such as estoppel (as previously discussed), statute of frauds, res judicata, and laches (statute of limitations). We conclude that none of these defenses required dismissal of Bethel's claims as a matter of law.

The statute-of-frauds defense apparently arises from Bethel's assertion that Mary deeded the first three tracts of land to Donald based on his promise to carry out Frank's intent to distribute the property to the children equally and that Donald "repudiated" that promise after Virgil died. *See* Ark.Code Ann. § 4–59–101(a)(4) (Repl.2001) (providing that no action shall be brought to charge any person upon any contract for the sale of lands or any interest concerning them unless the promise on which the action is brought is in writing and signed by the party to be charged therewith). However, where a party alleges the existence of a constructive trust, as Bethel does here, it is proper for the trial court to admit parol evidence of an oral promise to determine if a con-

structive trust should be imposed by a court of equity, and the statute of frauds does not apply. *See Bramlett v. Selman,* 268 Ark. 457, 597 S.W.2d 80 (1980).

 Donald also defended on the ground that Bethel's attempt to open an ancillary administration of Frank's Arkansas estate in 2006 operated as res judicata as to Bethel's current claims of entitlement to the Arkansas land. Res judicata bars relitigation of a claim in a subsequent suit when (1) the first suit resulted in a final judgment on the merits, (2) the first suit was based on proper jurisdiction, (3) the first suit was fully contested in good faith, (4) both suits involve the same claim or cause of action, and (5) both suits involve the same parties or their privies. *Villines v. Harris,* 340 Ark. 319, 11 S.W.3d 516 (2000). Given the parties' limited legal arguments on this issue, both below and on appeal, and the circuit court's lack of explanation for its ruling on this matter, we decline to rule at this point on whether the elements of res judicata have been satisfied. The parties may develop their arguments further upon remand.

 Finally, Donald claimed that Bethel's arguments were barred by the statute of limitations. This defense likewise suffers from a lack of development, not only regarding when Bethel's various causes of action arose, but also on the applicability of fraudulent concealment to toll the running of the limitations periods. Bethel pled fraudulent concealment and asserted that Donald had made various promises and misrepresentations that hid his actions and prevented her from discovering them. Fraudulent concealment is normally a question of fact not suited for dismissal by summary judgment. *Floyd v. Koenig,* 101 Ark. App. 230, 274 S.W.3d 339 (2008).

### V. *Conclusion*

For these reasons, we reverse the grant of summary judgment and remand the case for further proceedings.

Reversed and remanded.

PITTMAN and GLADWIN, JJ., agree.