2010 Ark. App. 118

**Christopher GORMAN and Arnette Gorman, Appellants**

v.

**Clif GILLIAM, d/b/a APCS, Inc., and Arkansas Pest Control Services; Norma Farnham, d/b/a APCS, Inc., and Arkansas Pest Control Services; Western Surety Company; Stephen L. Rice and Mitzi J. Wells, Appellees.**

**No. CA 09–501.**

Court of Appeals of Arkansas,

Feb. 11, 2010.

William Gregory Almand, William G. Almand, P.A., Little Rock, for appellants.

Brad A. Cazort, Canzort Law Firm, Little Rock, Monica Lee Mason, Mason & Harmon, PLLC, Sherwood, for appellees.

LARRY D. VAUGHT, Chief Judge.

Christopher Gorman and Arnette Gorman appeal from orders dismissing their claims against appellees Clif Gilliam and Norma Farnham, both d/b/a APCS, Inc., and Arkansas Pest Control Services (APCS); Western Surety Company; and Stephen Rice and Mitzi Wells. We affirm the dismissal as to Rice and Wells, but modify that order to be without prejudice; reverse the dismissal of the other claims; and remand.

Appellants bought real property in North Little Rock from Rice and Wells in December 2005. On August 27, 2008, appellants sued appellees, alleging that they had bought the property in reliance on a November 2005 report, contained in a termite-service agreement prepared by APCS, which indicated no termite activity at the home, and that, by summer 2007, the home was substantially destroyed by termites. Appellants alleged that Gilliam and Farnham were both licensed by the state plant board and in a "defacto partnership" doing business under the names APCS, Inc., and d/b/a Arkansas Pest Control Services. Appellants asserted that, in July 2005, employees of APCS had inspected the home; found termite activity; and reported that information to Rice's wife, Tammy Rice. Appellants attached copies of the termite report and the service agreement to the complaint. The July report, which had a heading of "APCS, Inc., Arkansas Pest Control Services," listed "Tammy Rice" as the owner and stated: "Termites found on crawl space door & hollow block see area marked below [in a graph]" and "8–16–05 Clif gave info to Tammy." The service agreement stated: "No visible evidence of wood destroying insects was observed." It provided that "APCS Termite & Pest Control, Inc. will make any necessary re-treat, will re-inspect and repair damage that may occur for a period of one year" and indicated that appellants could renew it at the end of one year by paying $100. Clif Gilliam's name, as "Company Representative," and license number were typed on the agreement, which Norma Farnham signed as "Company Manager." Wells and Rice signed directly under the statement that "all information regarding W.D.I. infestation, damage, repair, and treatment history has been disclosed to the buyer."

Appellants claimed that appellees Rice and Wells knew or should have known, because of the delivery of the July report to Tammy Rice, that the home was infested with termites; that they had a duty to disclose the fact that the November report was false, but failed to do so; that ⌊₃this failure to disclose the termite infestation was a material misrepresentation of fact; and that, had appellants known of the termite infestation, they would not have purchased the home. Appellants asked for rescission and restitution or damages for breach of contract from all defendants.

Western Surety moved to dismiss on the grounds that it had no contractual relationship with appellants; that it had issued the surety bond to APCS, Inc., binding it to the Arkansas State Plant Board; and that, even if the bond was in appellants' favor, appellants had not established any legal right to recover from it at that time. Western Surety attached a copy of the bond it issued to APCS, Inc.

Gilliam and Farnham also moved to dismiss. They asserted that they both were employees of APCS (Gilliam was president); that APCS, Inc., was a valid Arkansas corporation in good standing, not a partnership, as shown by the attached report from the secretary of state's office; that appellants' dealings were with the corporation; and that the signer of the service agreement did so in the capacity of an employee. The secretary of state's information, however, provided that "Arkansas Pest Control Supplies, Inc." was in good standing; that it had no fictitious names; and that Gilliam was its registered agent and president.

Rice and Wells also moved to dismiss under Arkansas Rules of Civil Procedure 12(b)(6) and 10(d) (which provides that a copy of any written instrument upon which a claim is based shall be attached to the pleading). They argued that appellants failed to state a cause of action for fraudulent misrepresentation, noting that the real-estate contract was not attached to the ⌊₄complaint, as required by Rule 10(d). Thus, they argued, appellants' complaint failed to allege that Rice and Wells made any representation to appellants about termite activity, and that, without the real estate contract, there was no basis for appellants' allegation that Rice and Wells had a duty to investigate or make any representation at all. They added that, even if they had such a duty, the complaint contained no allegation that they knew that the November report was false. Rice and Wells also argued that there were no allegations that they intended to induce appellants to act or that appellants justifiably relied on the purported representation.

The circuit court entered an order dismissing Western Surety, Rice, and Wells at 3:47 p.m. on October 31, 2008, stating: "Further, [appellants] have failed to allege facts sufficient to support a finding that [Rice and Wells] knew the representation was false or that [appellees] induced [appellants] to act." The court granted the motion to dismiss without stating whether it was with or without prejudice.

At 4:14 p.m. on October 31, 2008, appellants filed an amended complaint, which contained additional allegations against Rice and Wells, and attached a copy of the real estate contract. They moved to set aside the October 31, 2008 order for several reasons, one of which was that the bond issued by Western Surety was for the protection of the general public, not the plant board; another reason was that the Tammy Rice mentioned in the July 2005 report as having personally received a copy of the report was Stephen Rice's wife, and, therefore, her knowledge of the termite damage was imputed to him and Wells. Appellants noted that the order of

dismissal was entered about half an hour before they filed their amended complaint. In the alternative, they asked the court to modify the dismissal to be without prejudice so they could correct any defects in pleading.

Gilliam and Farnham filed an amended and substituted motion to dismiss, stating that they were employees (Gilliam as president) of Arkansas Pest Control Supplies, Inc., d/b/a APCS, Inc., which was a valid Arkansas corporation in good standing, as reflected by the attached information from the secretary of state's office; that APCS, Inc., was not a partnership, and appellants' complaint contained no allegations of evidence that it was; that all of appellants' dealings were with the corporate entity, APCS, Inc., and that the documents were signed in the capacity of an employee of APCS, Inc.; that appellants had failed to name or serve the correct corporate entity; and that APCS, Inc., and Arkansas Pest Control Services were d/b/a names of Arkansas Pest Control Supplies, Inc., an authorized corporate entity in Arkansas. In response, appellants pointed out that Arkansas Pest Control Supplies, Inc., had no registered fictitious names and that there was no legal corporate entity named APCS, Inc.

On January 12, 2009, the circuit court denied the motion to set aside. The same day, it granted the amended motion to dismiss, stating: "The Court finds that [appellees Gilliam and Farnham] are employees of Arkansas Pest Control Supplies, Inc. . . ." Appellants then pursued this appeal.

In determining whether to dismiss a complaint under Rule 12(b)(6), it is improper for the trial court to look beyond the complaint. *Smith v. Eisen*, 97 Ark. App. 130, 138–39, 245 S.W.3d 160, 168 (2006). In order to properly dismiss the complaint, the trial court must find that the complaining party either (1) failed to state general facts upon which relief could have been granted or (2) failed to include specific facts pertaining to one or more of the elements of one of his claims, after accepting all facts contained in the complaint as true and in the light most favorable to the nonmoving party. *Eisen*, 97 Ark.App. at 138–39, 245 S.W.3d at 168. Pleadings are sufficient if they advise a party of his obligations and allege a breach of them. *Id.*, 245 S.W.3d at 168.

In reviewing the circuit court's decision on a motion to dismiss under Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Eisen*, 97 Ark.App. at 138, 245 S.W.3d at 168. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.*, 245 S.W.3d at 168. However, Arkansas law requires fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id*, 245 S.W.3d at 168. According to Ark. R. Civ. P. 8(a)(1), a pleading that sets forth a claim for relief shall contain a statement in ordinary and concise language of facts showing that the pleader is entitled to relief. *Id.*, 245 S.W.3d at 168. Rules 8(a)(1) and 12(b)(6) must be read together in testing the sufficiency of a complaint. *Id.*, 245 S.W.3d at 168. We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Id*, 245 S.W.3d at 168.

In their first point, appellants argue that the circuit court erred in dismissing their claim for fraud against Rice and Wells. The elements of fraud are (1) a false representation of a material fact;

(2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Joplin v. Joplin,* 88 Ark.App. 190, 196 S.W.3d 496 (2004).

■ The circuit court was correct in dismissing appellants' claim for fraud against Rice and Wells, because appellants did not allege that they made any misrepresentation of fact. Although appellants base their claim for actual fraud on *nondisclosure* of the termite problem, nondisclosure is not enough to support a claim for actual fraud. It may provide a basis for a claim of constructive fraud, but appellants did not state facts which, if true, would support a claim for constructive fraud. Constructive fraud has been defined as a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraud feasor, the law declares to be fraudulent because of its tendency to deceive others. *Beatty v. Haggard,* 87 Ark. App. 75, 184 S.W.3d 479 (2004). Generally, however, liability for a nondisclosure may be found only in special circumstances, where there is a duty to communicate the purportedly concealed material fact. *See Downum v. Downum,* 101 Ark. App. 243, 274 S.W.3d 349 (2008). Failure to speak is the equivalent of fraudulent concealment only in circumstances when a duty to speak arises, such as those involving a confidential relationship, and where one party knows another is relying on misinformation to his detriment. *Ward v. Worthen Bank & Trust Co., N.A.,* 284 Ark. 355, 681 S.W.2d 365 (1984). Appellants did not attach the real-estate contract to their complaint; without it, it is impossible to determine whether Rice and Wells made any representations about termites, or whether they had any duty to disclose the July 2005 report.

■ The dismissal, however, should have been without prejudice. Arkansas Rule of Civil Procedure 12(j) provides that a trial court is to notify the attorneys of any action taken, and "if appropriate, the court will designate a certain number of days in which a party is to be given to plead further." Although appellants asked for permission to plead further, they were not given the chance to do so. Therefore, we affirm the order of dismissal, but modify it to be without prejudice to plead further, and remand to the circuit court. *Swink v. Ernst & Young,* 322 Ark. 417, 908 S.W.2d 660 (1995).

■ In their next argument, appellants contend that the surety bond was intended to protect members of the public from violations of the law by licensees and, therefore, they could sue Western Surety. We agree. The presumption is that parties contract only for themselves and, thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. *Elsner v. Farmers Ins. Group, Inc.,* 364 Ark. 393, 220 S.W.3d 633 (2005). In order for a stranger to a contract to sue upon it, there must be (1) an intent by the promisee to secure some benefit to the third party; and (2) some privity between the two—the promisee and the party to be benefitted—and some obligation or duty owing from the former to the latter that would give him a legal or equitable claim to the benefit of the promise, or an equivalent, from him personally. *Collins v. Cunningham,* 71 Ark.App. 297, 29 S.W.3d 764 (2000). Furthermore, it is not necessary that the person be named in the contract; if he is otherwise sufficiently described or designated, he may be one of a class of persons if the class is sufficiently described or des-

ignated. *Elsner,* 364 Ark. at 395, 220 S.W.3d at 635.

Arkansas Code Annotated section 17–37–210(a) (Repl.2001), which was in effect when appellants sued appellees, provided that an applicant for a termite license must furnish a surety bond. It also stated:

> (3)(A) Any bond required by this chapter shall be in favor of the State of Arkansas for the benefit of any person damaged as the result of a violation of this chapter by any operator licensed under this chapter and for the benefit of any person who, after entering into a contract with the licensee, is damaged by the failure of the licensee to properly perform the contract.
>
> (B) Any person claiming against the bond may maintain an action at law against the licensee and the surety.

■ Western Surety does not dispute that its bond covered the writers of the termite reports involved in this lawsuit. Although its contract was with APCS, Inc., appellants were members of the class of persons that it was intended to benefit. Thus, under the terms of this statute, appellants could maintain an action against the surety. However, Western Surety issued the bond to APCS, Inc., which is an unregistered fictitious name. Although APCS, Inc., is a named defendant, it does not legally exist. Arkansas Pest Control Supplies, Inc., legally exists, but is not a named party. It will be necessary to further develop the facts as to the identity of the proper principal on the bond, and appellants may need to amend their complaint accordingly. With these considerations, we reverse and remand as to Western Surety.

In their third point, appellants argue that the circuit court erred in dismissing their claim against Gilliam and Farnham because they are liable (in their individual capacities) for any recovery to which appellants are entitled. Specifically, appellants argue that—contrary to the court's conclusion—though Gilliam and Farnham may have been employees of Arkansas Pest Control Supplies, Inc., this does not support a conclusion that they signed the relevant documents on behalf of that corporation because these documents referenced a fictitious name that was not registered with the secretary of state.

■ Appellants correctly point out that Arkansas Code Annotated section 4–27–404 (Repl.2001) provides that no corporation shall conduct any business in this state under a fictitious name unless it first files certain information with the secretary of state and, in the case of a domestic corporation, with the county clerk. This statute provides that a corporation cannot enforce its rights under a contract until it complies with the statute's requirements. Therefore, appellants reason that when the alleged "representative capacity" is that of an employee of an Arkansas company that "does not exist" (as a legal corporate entity) the signatures are made in an individual capacity, or in the capacity of a de facto partnership.

Indeed, the document at issue in this case does not bear the corporate name— Arkansas Pest Control Supplies, Inc., and the corporate offices (Gilliam as president and Farnham as secretary) are not reflected on the signed termite reports. Instead, the unregistered, fictitious names APCS and Arkansas Pest Control Services are referenced in the writing. To that extent, appellants have stated a claim against Gilliam and Farnham. The viability of the claim—specifically whether failure to properly register and the question as to whether they were individually doing business or signing only in representative capacities cannot be determined until the facts are further developed. We therefore

reverse and remand as to Gilliam and Farnham.

Affirmed as modified in part; reversed in part; and remanded.

PITTMAN and ROBBINS, JJ., agree.