2010 Ark. App. 681

**Darla JACKSON, Appellant**

v.

**Tanya SMITH, f/k/a Tanya Gonzales, et al., Appellees.**

**No. CA 09–1374.**

Court of Appeals of Arkansas.

Oct. 20, 2010.

Rehearing Denied Dec. 1, 2010.

Tim S. Parker, Parker Law Firm, Eureka Springs, for appellant.

Michael T. Newman, Jones, Jackson & Moll, PLC, Fort Smith, for appellees.

LARRY D. VAUGHT, Chief Judge.

Appellant Darla Jackson lived and worked at the Turpentine Creek Wildlife Refuge in Carroll County from the late 1990s until mid-July 2005. She was married to Robert Jackson, who died in September 2002. His mother is appellee Hilda Jackson. Appellee Tanya Smith, f/k/a Tanya Gonzales, is Robert's sister. Tanya Smith owns legal title to the property on which the refuge is operated. On Febru-

ary 3, 2001, Tanya Smith, as president of Turpentine Creek Foundation, Inc., and Dr. Charles Bosch, as its chairman of the board, signed a "Revocable Life Estate" deed to an interest in 463.584 acres in Carroll County to appellant. It stated:

THAT Turpentine Creek Wildlife Refuge, an Arkansas Corporation, GRANTOR, by its, President and Chairman of the Board, duly authorized so to act by proper resolution of its Board of Directors, for and in consideration of the sum of Ten Dollars ($10) and other valuable consideration to Turpentine Creek Wildlife Refuge, Grantor, paid by Darla Jackson, GRANTEE, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey to Darla Jackson a revocable undivided life estate to be held as tenants in common for his [sic] natural life, with said property vesting in the grantor, Turpentine Creek Foundation, holding the remainder interest in fee simple absolute. This life estate is revocable and the grantor has the right of entry should any of the following conditions subsequent occur:

1. Grantee causes any damage or harm, whether willful or negligent, to any animals, cotenants, guests, or property of Turpentine Creek Foundation.

2. Grantee attempts to alienate, convey, or mortgage his/her life estate.

3. Grantee interferes with the Foundation's Directors or Board Members.

4. Grantee interferes with or jeopardizes the Foundation's mission or nonprofit status.

5. Grantee fails to obtain approval from the grantor for any building or construction

Upon the death and/or termination of the grantee, the life estate with the following legal description reverts to the grantor:

. . .

Grantor COVENANTS that it is lawfully seized of said lands and premises and that it will forever warrant and defend the title to said lands against all claims.

The deed was recorded on May 22, 2001.

On April 10, 2008, appellant sued Tanya Smith; Tanya's husband, Scott Smith; Hilda Jackson; Turpentine Creek Foundation, Inc.; and Turpentine Creek Wildlife Refuge, Inc., in the Carroll County Circuit Court for conversion, breach of title, defamation, slander of title, and declaratory judgment regarding her interest in the property. Appellant asserted that she had been constructively evicted from the property when Scott Smith and other agents and employees of Turpentine Creek cut the electricity to her home. She also stated that, in the fall of 2007, Hilda Jackson had asked her to sign a quit-claim deed relinquishing her life estate in the property; through her attorney, appellant offered to sign the deed for $175,000. According to appellant's complaint, Tanya Smith, president, and Dave Schoonover, chairman of the board of the wildlife refuge, filed a "Termination of Life Estate" document in the circuit clerk's office on November 14, 2007. This document stated that the refuge revoked and forever terminated appellant's life estate because:

WHEREAS, Darla Jackson has willfully caused bodily harm to co-tenants residing upon the subject property or with the right and privilege to so reside; and

WHEREAS, Darla Jackson has willfully abused employees of the Turpentine Creek Wildlife Refuge, both physically and verbally and in such a manner and at such times as to impair the purpose and mission of the refuge; and

WHEREAS, Darla Jackson has misappropriated monitory funds [sic] and goods of the refuge and attempted, through fraud and deceit to prevent the discovery of her misappropriation.

In her claims for declaratory judgment regarding her life estate and breach of covenant of title, appellant asked for compensatory damages (including rents and profits); punitive damages; and injunctive relief. Appellant also asserted that appellees' actions had constituted slander of title. In her claim for conversion, she stated that, while living on the property, she was a licensed minister and performed weddings; in conjunction with those services, she and her husband had erected a wedding chapel on the property. Appellant alleged that, after her constructive eviction from the property, Turpentine Creek had sold the chapel for $5,000 to Ray Tressler. Appellant asked for damages that she had sustained as a result of the conversion of "her wedding chapel" and the loss of revenue that she would sustain in the future from not being allowed to operate "her wedding business" on the ⌊4property.

Appellees filed a motion to dismiss for failure to state a cause of action on May 1, 2008. In response, appellant filed a copy of an "Irrevocable Life Estate" from Tanya Gonzales to her parents, Donald and Hilda Jackson. The court held a hearing on the motion, which it denied.

On May 11, 2009, appellant filed a second amended complaint against Tanya Smith; Scott Smith; Hilda Jackson; Don Jackson; Charles Bosch; Jena Foster and Joan Everett, personal representatives of the Estate of Elizabeth Ann Freeman; Turpentine Creek Foundation, Inc.; Turpentine Creek Wildlife Refuge, Inc.; and Arvest Bank.[1] Appellant alleged that appellees Tanya Smith, Hilda Jackson, Don Jackson, and Scott Smith held life estates in the property. Appellant included causes of action for declaratory judgment as to her life estate; profits and rentals; breach of covenants of title and quiet enjoyment; and slander of title. Appellant also included a claim for declaratory judgment that, in the event that the property was actually owned by Tanya Smith at the time of the deed granting appellant her life estate, the court should find that the deed passed to appellant a life estate in any interest owned or claimed individually by Tanya Smith, as well as any interest held by the Turpentine Creek entities. Appellant also included a claim for fraud/constructive ⌊5fraud, stating that, at the time of the delivery of her deed, Tanya Smith, Charles Bosch, and Turpentine Creek made false representations to her that Turpentine Creek owned the property and that it was free of other claims or encumbrances. She alleged that they knew those representations were false, or made them without sufficient evidence upon which to make them, with the intention to induce her to rely upon said representations, which she did, suffering damages. Appellant asked the court to impose a constructive trust on the property and any traceable proceeds from its rents, profits, and earnings, on the basis of unjust enrichment. She also included a claim for conversion of "her wedding chapel." To her complaint, appellant attached copies of revocable life-estate deeds from the wildlife refuge to Tanya Smith, Scott Smith, and Hilda Jackson.

1. According to the complaint, Arvest Bank and the Estate of Elizabeth Ann Freeman held mortgages on the property. Because there is no indication in the record that Don Jackson, Bosch, Foster, Everett, or Arvest Bank were served with process, there is no finality problem for purposes of appeal. *See* Ark. R. Civ. P. 54(b)(5).

Appellees filed a motion for partial summary judgment on August 4, 2009. They asserted that appellant's claims for breach of warranties of title and quiet enjoyment, fraud, and declaratory judgment should be dismissed because of the statute of limitations. They further argued that her causes of action for slander of title and conversion should fail because they were based on an invalid claim of title. In their accompanying brief, appellees pointed out that, in her second amended complaint, appellant had acknowledged that, at the time of the deed to appellant, Turpentine Creek did not have title to the property; actual title had been held by Tanya Smith since April 1, 1994. Appellees attached a copy of that recorded deed. They stated that, at the time of the conveyance to appellant, Turpentine Creek had possessed only the interest of a tenant in the property, as revealed by a lease filed on December 5, 1996. They argued that, because the grantor did not have title to the property at the time of the conveyance, any claim for breach of warranty of title or quiet enjoyment would have been ripe upon delivery of the deed to the appellant, on or before May 22, 2001; therefore, the statute of limitations provided in Arkansas Code Annotated section 16–56–115 ran on May 22, 2006. Appellees argued that, because appellant was already living on the property before 2001, the statute of limitations began to run before she was constructively evicted. They also pointed out that, in her deposition, she had acknowledged that she had never received any rents or profits. They argued that there had been no concealment that would permit a tolling of the statute of limitations. They further alleged that the three-year statute of limitations for fraud set forth in Arkansas Code Annotated section 16–56–105 ran on May 22, 2004, because appellant's only allegations of fraud were related to the deed. Appellees also stated that appellant's causes of action for slander of title and for the imposition of a constructive trust on the rents and profits should be dismissed because they were based on her claim of title.

In response, appellant argued that the statute of limitations did not apply to the claim for breach of warranties of title and quiet enjoyment. She stated that her cause of action began to accrue on the date that appellees attempted to revoke her life estate on November 14, 2007; at the very earliest, the statute of limitations would have commenced when Scott Smith and other employees of Turpentine Creek constructively evicted her in July 2005. In support of her response, appellant attached copies of exhibits to her June 22, 2009 deposition, including a form that Robert Jackson had filed with the IDA Program Economic Opportunity Agency of Washington County for building the wedding chapel, and an invoice from Town and Country Gazebo Sales dated May 25, 2002. She also filed further correspondence with the EOA of Washington County, Inc., related to the purchase of the wedding chapel that indicated that appellant had personally paid $666.67 for the materials.

The court entered summary judgment for appellees on October 2, 2009, stating:

The documents presented to the court as exhibits to the complaint indicate that Tanya Gonzalez, a/k/a, Tanya Smith received title to the property in 1994 by Trustee's Deed from Frank R. Chauvin, Trustee of the Joyce Davis Harvey Revocable Trust. Ms. Gonzalez leased the land to the Turpentine Creek Wildlife Foundation, Inc. in 1996. Nothing in the lease to Turpentine Creek Wildlife Foundation, Inc. grants the tenant any power to alienate the interests of the title holder. Tanya Gonzalez, a/k/a Tanya Smith then executed a series of "Revocable Life Estates" on behalf of the

Turpentine Creek Wildlife Refuge in 2001. These "Revocable Life Estates" were made to Darla Jackson, Tanya Smith, Scott Smith and Hilda Jackson. An "Irrevocable Life Estate" was granted to Donald R. and Hilda P. Jackson by Tanya Gonzalez individually and as President of the Turpentine Creek Foundation at some point in time but no date is contained on the conveyance and there is nothing to indicate that the conveyance was made in accordance with the required corporate acknowledgment. On November 14, 2005 ARVEST Bank was granted a mortgage on the same property which had been the subject of all the previous conveyances. In sum, Tanya Gonzalez, a/k/a Tanya Smith retained title to the property while executing documents of conveyance in the name of the Turpentine Creek Foundation which was merely the leasee of the property. The conveyances of any interest in the property were void where they purported to be in the name of Turpentine Creek Wildlife Refuge or Turpentine Creek Wildlife Foundation.

The court finds that all conveyances by Turpentine Creek Wildlife Refuge or Turpentine Creek Wildlife Foundation are void and the document titled "Revocable Life Estate" on which the plaintiff relies is void. It is elementary that land not owned by the grantor cannot pass by his deed. An exception to this rule of law is after acquired property, but there is nothing in the record to indicate that the Turpentine Creek Wildlife Refuge held valid title to the property at any time or that the Turpentine Creek Wildlife Refuge ever received title to the property after executing the "Revocable Life Estate" to the plaintiff and others.

The court further notes that the plaintiff seeks damages, but that such a remedy is not available where the deed is void and has no legal effect. The case at bar is distinguished from the deed or conveyance which is voidable. If a deed is void it may be attacked at any time by any party prejudiced by it, and the court may proceed as if it did not exist without any formal pleadings for its invalidation. On the other hand, if the deed or conveyance is merely voidable by reason of mistake or deception, cancellation may be denied. As stated in *Somes v. Brewer*, 19 Mass. 184 [ (1824) ]:

"Whateaver [sic] may be avoided may in good sense be called void, and this use of the term "void" is not uncommon in the language of statutes and of courts; but in regard to the consequences to third persons the distinction is highly important because nothing can be founded on a deed which is absolutely void, whereas from those which are only voidable fair titles may flow."

The court further finds that any cause of action pertaining to the void conveyance arose at the time of the delivery of the deed and that the applicable statute of limitations is five years under A.C.A. 16–56–115 and that the date of the filing of the document is presumptively the date of delivery which was May 22, 2001. The plaintiff's claim is therefore barred by the statute.

Appellant then filed a timely notice of appeal.

Summary judgment may be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Bisbee v. Decatur State Bank*, 2010 Ark. App. 459, 376 S.W.3d 505. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. *Id.* When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issues as to a material fact. *Id.* When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Id.* On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* In making this decision, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

■ Appellant first argues that the trial court erred in granting summary judgment on her claim for conversion, which was subject to a three-year statute of limitations, Arkansas Code Annotated section 16–56–105 (Repl.2005).[2] She bases this claim on Turpentine Creek's sale of the wedding chapel to Ray Tressler for $5000 on July 21, 2005, after which, Tressler removed the chapel from the property. Appellant points out that, with the help of a triple-matching government grant, she and her husband purchased the materials for the chapel. She presented documentary evidence that the chapel cost $4395; of that amount, appellant paid $666. Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Carpenter v. Layne,* 2010 Ark. App. 364, 374 S.W.3d 871. One commits the tort of conversion when he wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's

rights. *Id.* To be sufficient, the complaint must state that the plaintiff had a property interest in the subject goods and that the defendant wrongfully converted them. *Brown v. Blake,* 86 Ark. App. 107, 161 S.W.3d 298 (2004). The property interest may be shown by possession or a present right to possession when a defendant cannot show a better right. *Id.*

Regardless of who held legal title to the land, appellant's claim for conversion should have been tried. Appellant alleged unjust enrichment and testified in her deposition about the years of labor she provided to the refuge as well as the money she invested in "her" chapel. We therefore reverse on this point.

■ Appellant next asserts that the trial court erred in granting summary judgment on her claims for declaratory judgment regarding her life estate and for breach of the covenants of title and quiet enjoyment. She argues that, when the wildlife refuge, by its president and chairman of the board, gave her a deed to a revocable life estate containing the words "grant, bargain and sell," they promised to defend her title. According to Arkansas Code Annotated section 18–12–102(b) (Repl.2003), the words "grant, bargain and sell" in a deed create a covenant or warranty that the grantor is seized of an indefeasible estate in fee simple. It states:

> The words "grant, bargain and sell" shall be an express covenant to the grantee, his or her heirs, and assigns that the grantor is seized of an indefeasible estate in fee simple, free from encumbrance done or suffered from the grantor, except rents or services that may be expressly reserved by the deed, as also for the quiet enjoyment thereof

---

2. For the first time, appellant argues in her reply brief that, because appellees did not raise the affirmative defense of the statute of limitations in their answer, the trial court should not have considered it. We do not consider issues argued for the first time in a reply brief. *Larco, Inc. v. Strebeck,* 2010 Ark. App. 263, 379 S.W.3d 16.

against the grantor, his or her heirs, and assigns from the claim and demand of all other persons whatever, unless limited by express words in the deed.

Ark.Code Ann. § 18–12–102(b).

■ Appellant further asserts that the doctrine of estoppel by deed should apply here. Estoppel by deed prohibits one party to a deed and his privies from asserting, as against the other party and his privies, any right or title in derogation of the deed, or from denying the truth of any material facts asserted. *Acuff v. Bumgarner*, 2009 Ark. App. 854, 371 S.W.3d 709. Under this doctrine, a grantor is estopped to assert anything in derogation of his deed; thus, a specific recital in a deed, to the effect that the grantor has title to or that he is in possession of the land conveyed, will estop him from asserting the contrary as against the grantee. *Id.*

Appellees respond that, because the foundation was not the owner of the property, it could not convey a life estate to appellant. That may be true; nevertheless, Tanya Smith and Turpentine Creek clearly made warranties to appellant and should be required to honor them or establish why they need not do so. We therefore reverse the award of summary judgment on appellant's claims for declaratory judgment regarding her life estate, breach of warranty, and estoppel by deed.

■ Appellant also argues that the five-year statute of limitations for breach of warranty of title, Arkansas Code Annotated section 16–56–115 (Repl.2005), did not begin to run until she was constructively evicted from the property in July 2005, at the earliest. It is well established that the mere existence of superior title, whether or not the grantee has notice of its existence, is insufficient to constitute breach of a warranty. *Riddle v. Udouj*, 371 Ark. 452, 267 S.W.3d 586 (2007).

Rather, a cause of action for breach of a warranty accrues and the statute of limitations begins to run only when the grantee is evicted or constructively evicted from the conveyed property. *Id.* Eviction occurs when a person is dispossessed by process of law. *Id.* Constructive eviction, on the other hand, occurs when a purchaser is unable to obtain possession because of a paramount outstanding title. The case law is clear that notice of a claim is not the standard for commencing the running of the statute of limitations in a breach-of-warranty action. *Id.* Where, however, there is a visible, physical encroachment on the complainant's land, a constructive eviction may occur long before a court finds that title is held by a third party, and the statute of limitations begins to run immediately upon conveyance. *Id.*

Appellees argue that appellant was prevented from possessing the entire 463–acre tract because the refuge was being operated there; Tanya and Scott Smith and Hilda Jackson lived there; and appellant was aware that she was not receiving rents and profits. Thus, they assert, she was constructively evicted in 2001 and the statute of limitations ran in 2006. We disagree. Regardless of whether appellant had possession of the full acreage, she did live there until her electricity was cut off in 2005, which is when the statute of limitations began to run. Accordingly, we reverse on this point.

■ Appellant contends that the three-year statute of limitations for fraud did not begin to run until November 2007, when appellees filed the termination-of-life-estate document. Appellant asserts that, at least until November 2007, the wildlife refuge continued to represent to appellant and others that it owned the property before it gave the revocable life estate to appellant in May 2001, thereby committing

fraudulent concealment sufficient to toll the statute of limitations. We disagree.

 The elements of fraud are (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Gorman v. Gilliam*, 2010 Ark. App. 118, 374 S.W.3d 117. Constructive fraud has been defined as a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraud feasor, the law declares to be fraudulent because of its tendency to deceive others. *Id.* Absent concealment, the statute of limitations begins to run upon the occurrence of the wrong, and not when it is discovered. *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009). This rule applies even when there is an interval between the allegedly tortious act and the damage suffered by the plaintiff. *Id.* The "occurrence rule" has remained the law since 1877, even though the supreme court has been invited to change it on numerous occasions. *Id.* When a defendant has engaged in affirmative acts of concealment, the statute of limitations begins to run at the time the cause of action is discovered or should have been discovered by reasonable diligence. *Technology Partners, Inc. v. Regions Bank*, 97 Ark. App. 229, 245 S.W.3d 687 (2006). Mere ignorance on the part of the plaintiff of his rights or the mere silence of one who is under no obligation to speak will not toll the statute. *Id.* There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Id.* Failure to speak is the equivalent of fraudulent concealment

only in circumstances when a duty to speak arises, such as those involving a confidential relationship, and where one party knows another is relying on misinformation to his detriment. *Gorman v. Gilliam, supra.*

Appellees contend that appellant's fraud claim is time-barred because the only fraudulent representations alleged by appellant occurred in 2001 when she received her deed. Appellees also assert that appellant raised the "ongoing fraudulent concealment" allegation for the first time on appeal, and it is, therefore, not preserved for appellate review, *see Exigence, LLC v. Baylark*, 2010 Ark. 306, 367 S.W.3d 550; in any event, the statute of limitations ran in 2004, so whatever they misrepresented in 2007 was of no effect. We agree with appellees and affirm on this issue.

 Appellant next asserts that the trial court erred in granting summary judgment on her claim that, because Tanya Smith personally owned the property when she signed the deed to appellant on behalf of Turpentine Creek, the deed conveyed a life estate in any interest owned by Tanya Smith, through the application of the doctrine of estoppel by deed. We agree. Appellant cites 28 Am.Jur.2d *Estoppel and Waiver* § 12 (2000), which supports her argument:

Generally, a person who, acting in a representative capacity, executes a conveyance of land, without reservations, which purports to convey the entire property or the fee in the property, or which represents that the title is in another, is estopped to claim in his individual capacity an interest in the property. Thus, agents, corporate officers, guardians, trustees, and executors and administrators have been held to be estopped by execution of conveyances in the foregoing representative capacities to assert any individual interest in property.

The rule, that persons in a representative capacity are estopped to assert an individual interest in the property is especially applicable where the conveyance executed in such representative capacity contains covenants of warranty, is a sale and conveyance of the entire estate, or where it appears that full value was received for the property, including the personal interest of the party executing the conveyance. It has been pointed out, however, that in order to create an estoppel against a person conveying land in a representative capacity, it is not necessary that the deed contain covenants.

Some authorities have taken the view that a person who executes a transfer of land in a representative or fiduciary capacity is not estopped to claim an interest in the property in his individual right.

Appellees argue that this claim is also time-barred for the same reasons that appellant's breach-of-covenants claim is barred. We disagree. The statute of limitations began to run in July 2005, and this claim is viable for the same reasons expressed above.

■ Appellant further argues that the circuit court erred in granting summary judgment on her request for a constructive trust. We agree. A constructive trust is a remedial rather than a substantive institution. *Betts v. Betts,* 326 Ark. 544, 932 S.W.2d 336 (1996). Such trusts arise whenever it appears from the facts that the beneficial interest should not go with the legal title. *Id.* A constructive trust is an implied trust that arises by operation of law when equity demands. *Tripp v. Miller,* 82 Ark. App. 236, 105 S.W.3d 804 (2003). Such a trust may be imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that

he would be unjustly enriched if he were permitted to retain it. *Acuff v. Bumgarner,* 2009 Ark. App. 854, 371 S.W.3d 709. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property. *Id.* The remedy of constructive trust is available, therefore, if appellant prevails on any of her causes of action remanded for trial.

■ Appellant also alleges that the trial court erred as a matter of law in holding that the doctrine of after-acquired title did not apply to this action. The common law doctrine of after-acquired title, which is codified at Arkansas Code Annotated section 18–12–601 (Repl.2003), becomes relevant when a person conveys a deed to lands he does not yet own but later acquires. *Acuff v. Bumgarner, supra.* The trial court correctly ruled that it had no application here because there was no evidence that the wildlife refuge ever received legal title to the property.

■ Appellant argues that the trial court erred in granting summary judgment on her claim for slander of title. Slander of title is an action based on malicious publication of a false matter that disparages the title to property. *Fleming v. Cox Law Firm,* 363 Ark. 17, 210 S.W.3d 866 (2005). We affirm this issue because appellant produced no evidence of malice, which is an essential element of a cause of action for slander of title. *Bright v. Gass,* 38 Ark. App. 71, 831 S.W.2d 149 (1992).

Accordingly, we reverse as to appellant's claims for conversion, declaratory judgment, breach of warranty, estoppel by deed, and imposition of a constructive trust and remand for trial. The trial court's summary judgment order on the issues of fraud/constructive fraud and slander of title is affirmed.

Affirmed in part; reversed and remanded in part.

GLOVER and BAKER, JJ., agree.