Cite as 2022 Ark. App. 406

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-123

|  |  |
|---|---|
| | Opinion Delivered October 19, 2022 |
| MAGGIE HALL, ADMINISTRATRIX OF THE ESTATE OF BRENDA DELL ALLBRIGHT, DECEASED<br>APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-19-181] |
| V. | HONORABLE ANDREW S. BAILEY, JUDGE |
| GAGE'S POWERSPORTS, INC.<br>APPELLEE | AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Maggie Hall, administratrix of the estate of Brenda Dell Allbright, deceased, appeals from the order of the Boone County Circuit Court granting summary judgment to appellee Gage's Powersports, Inc. We affirm.

In August 2018, Brenda Allbright went to Gage's with her son and selected a Honda Rebel motorcycle she wished to purchase. Allbright wanted to finance the purchase, but her credit application was denied. Allbright then asked her brother, Louis Hall, to cosign the loan for her. On August 24, 2018, Louis signed a "notice to co-signer/guarantor" and submitted a credit application that was ultimately approved. On August 27, Allbright signed the bill of sale and completed the purchase of the motorcycle. The bill of sale also contains the signatures of Gage's employee Kristy Clayborn and Louis, although Clayborn and Louis agree that Louis was

not present on August 27.[1] Allbright drove the motorcycle off the lot and shortly thereafter was in a one-vehicle accident. Allbright died from her injuries the next day.

Maggie Hall, Allbright's mother and administratrix of her estate, filed suit against Gage's alleging negligent entrustment, negligent supervision, fraud, and wrongful death.[2] Maggie claimed that Clayborn knew or should have known that Allbright was not competent to operate a motorcycle as evidenced by the lack of a motorcycle endorsement on her driver's license and by her mental disease or defect, specifically schizophrenia. Maggie alleged that Louis should have been required to cosign the contract on August 27 before Gage's gave Allbright possession of the motorcycle, and had Louis been required to appear and sign the contract, he would have prevented Allbright from driving the motorcycle from the dealership. Maggie alleged that Gage's negligently gave Allbright possession of the motorcycle, that Gage's negligently failed to train and supervise Clayborn to ensure that documents were properly executed to complete the sale, that Clayborn was negligent in conducting the transaction, and that Clayborn falsely represented that a cosigner was needed when, in fact, the transaction was completed without Louis.

Gage's filed a motion for summary judgment supported by excerpts from Clayborn's and Louis's depositions. Gage's argued that it was entitled to summary judgment on Maggie's negligent-entrustment claim because (1) negligent entrustment cannot be a first-party claim; (2)

---

[1]Clayborn testified that there was another bill of sale that Louis signed at a different time for just the motorcycle, and Allbright added the extended service contract on August 27 as reflected on the bill of sale in evidence. Allbright, but not Louis, also signed a retail installment sale contract.

[2]The operative complaint at the time the circuit court entered judgment was a second amended complaint that was filed after Gage's motion for summary judgment had been filed.

2

a seller is not liable for negligent entrustment where it has no right to control the property; and (3) Allbright was not incompetent, and even assuming she was, Gage's had no reason to suspect she was incompetent. Gage's argued that Maggie could not prove the negligent-training claim because in selling the motorcycle to Allbright, Gage's employees adhered to the law, which required that Allbright be over the age of sixteen, but did not require that she have a motorcycle endorsement on her driver's license.[3] Gage's alleged that Maggie could not sustain a claim for fraud because Gage's did not make a false representation of material fact. The circuit court granted Gage's motion for summary judgment on all the claims.

Our standard of review for summary-judgment cases is well established. *Ponder v. Gorman*, 94 Ark. App. 159, 227 S.W.3d 428 (2006). Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.* The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.*

---

[3]Allbright was in her fifties.

I. *First-Party Negligent Entrustment*

The elements of negligent entrustment are as follows: (1) the entrustee was incompetent, inexperienced, or reckless; (2) the entrustor knew or had reason to know of the entrustee's conditions or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant. *Pace v. Davis*, 2012 Ark. App. 193, 394 S.W.3d 859. Negligent-entrustment cases are generally brought by third parties who were injured by the entrustee's negligence. The parties here agree that Arkansas has not, to this point, recognized a claim for first-party negligent entrustment, which is a cause of action lying with the entrustee himself. The circuit court did not decide whether such a cause of action exists but instead found that there was no genuine issue of material fact as to whether Gage's knew or had reason to know of Allbright's incompetence, inexperience, or recklessness with regard to the operation of a motorcycle.

In arguing that Gage's knew or should have known that Allbright was incompetent to operate the motorcycle, Maggie relies heavily on the affidavit of Dr. James Hawk. According to Dr. Hawk, he was Allbright's general practice physician "from one to four months between 2015 and 2017."[4] He stated that he concurred in Allbright's prior diagnosis of schizophrenia and that Allbright "would not appreciate the risk of riding a motorcycle with no experience in doing so. Because of her disorder she did not appreciate risks as a normal individual would." Dr. Hawk also stated that "[a]ny person who did not suffer from cognitive deficits would recognize Brenda

---

[4]Dr. Hawk said that Allbright did part-time custodial work in his building during this same time period.

Allbright suffered from a mental disorder after spending a few minutes with her." Maggie argues that Allbright was around Clayborn for more than just a few minutes; thus, Clayborn should have noticed that Allbright "suffered from a mental disability that could influence her ability to appreciate the risk of operating a motorcycle." Maggie argues that the fact that Allbright's driver's license lacked a motorcycle endorsement should have been an additional factor putting Gage's on notice that she was incompetent to operate a motorcycle.

According to the deposition testimony of Louis and Maggie, Allbright regularly drove a car and drove with her grandchildren in the car. Louis had no knowledge of her having any accidents. When asked about signs of her mental illness, Maggie said that Allbright "said things that you didn't understand," and Louis said that she would stay in her cabin for a few days and want to be left alone. Louis acknowledged that he did not tell anyone at Gage's that Allbright had a mental-health condition that should preclude her from operating a motorcycle or that he did not want Allbright to be given possession of the motorcycle. Louis said that he did not observe Allbright doing anything unusual at Gage's. Although both Maggie and Louis said they had no knowledge of Allbright ever operating a motorcycle before, Gage's mechanic, George Kelley, testified that Allbright told him that she used to own a Goldwing motorcycle. Clayborn testified that Louis said "this would be interesting" regarding Allbright's intended purchase. When Clayborn questioned what he meant, he allegedly responded, "No, she will be fine; she had a Goldwing."

Maggie's argument that Dr. Hawk stated that others would be able to tell that Allbright suffered from a mental disorder that would influence her ability to operate a motorcycle combines two of Dr. Hawk's statements. Dr. Hawk stated separately that Allbright would not

appreciate the risk of riding a motorcycle and that any person would recognize that she suffered from a mental disorder. Dr. Hawk's affidavit does not establish that any person would recognize that Allbright would not appreciate the risk of riding a motorcycle. The circuit court recognized this distinction in finding as follows:

> Dr. Hawk's sworn statement does not contradict other testimony provided herein. There is no dispute Ms. Allbright suffered from a mental disorder, and this certainly may have caused her to not understand the risks associated with driving a motorcycle. However, there is no evidence Defendant could or should have known of Ms. Allbright's inexperience with motorcycles, or the effect of her mental disorder on her ability to appreciate the risks of driving one.

We agree with the circuit court that Maggie failed to meet proof with proof regarding evidence that Gage's knew or should have known that Allbright was incompetent to operate a motorcycle.

In a claim for negligent entrustment, the driver's incompetence and lack of capacity in operating the vehicle must be established first. *See Ponder*, *supra*. Accordingly, we find no error in the court's order granting summary judgment on negligent entrustment.

## II. *Negligent Supervision*

Under the theory of negligent supervision, employers are subject to direct liability for the negligent supervision of employees when third parties are injured as a result of the tortious acts of employees. *Addington v. Wal-Mart Stores, Inc.*, 81 Ark. App. 441, 105 S.W.3d 369 (2003). The employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm. *Id.* As with any other negligence claim, to prove negligent supervision, a plaintiff must show that the employer's conduct was a proximate cause of the injury and that the harm to third parties was foreseeable. *Id.* It is not necessary that the employer

foresee the particular injury that occurred, only that he or she reasonably foresee an appreciable risk of harm to others. *Id.*

The circuit court found that Maggie had failed to offer proof that any injury was foreseeable as a result of Clayborn's paperwork errors because there was no genuine issue of material fact that either Gage's or Clayborn knew or should have known that Allbright was incompetent to operate a motorcycle. Maggie argues that Clayborn erroneously thought the "notice to co-signer" made Louis liable; failed to require Louis to sign the retail installment contract and bill of sale; put the wrong length of employment and length of residency on Louis's credit application; and forged Louis's name or allowed it to be forged on the bill of sale. Maggie contends that Gage's should have known that Clayborn was not executing the proper paperwork to complete the sale and that incompetent and inexperienced people were taking possession of motorcycles.

Gage's argues that Maggie ignores the fact that the paperwork errors are only allegedly relevant because of Allbright's mental condition. We agree. Because there was no evidence putting Gage's on notice that Allbright was incompetent, there is no proof that it could have known that paperwork errors would subject others to an unreasonable risk of harm. Accordingly, summary judgment on the claim of negligent supervision was appropriate. Maggie also argues that Gage's is liable for general negligence because Clayborn's paperwork errors were made in the course and scope of her employment; however, Maggie has still failed to prove foreseeability.

III. *Fraud*

The elements of fraud are (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Jackson v. Smith*, 2010 Ark. App. 681, 380 S.W.3d 443. Constructive fraud has been defined as a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraudfeasor, the law declares to be fraudulent because of its tendency to deceive others. *Id.*

The circuit court found that, according to Maggie's response to the summary-judgment motion, her fraud claim was based on the allegation that Clayborn made a false representation to Louis that Allbright needed a cosigner when the transaction was ultimately completed without Louis cosigning. The circuit court found, however, that it was undisputed that Allbright's attempt to secure credit on her own was denied, and it was only approved with the addition of Louis's credit application as cosigner. On appeal, Maggie argues that the circuit court misinterpreted the fraud argument and that Clayborn's misrepresentation to Allbright was that she knew how to complete the transaction and would properly complete the transaction with a cosigner. Gage's argues that Maggie fails to cite any evidence in the record that Clayborn ever made such an affirmative representation.

Maggie alleged in her second-amended complaint that Clayborn "falsely represented that a co-signer/guarantor was needed for the decedent to purchase the motorcycle when she asked decedent's brother to sign the notice to co-signer/guarantor." As the circuit court found, the transaction was only able to go forward with the addition of Louis's credit application. Thus, this representation was not false. The financing was approved with Louis as the cosigner;

8

whether the paperwork was executed in such a way that actually made him liable on the debt is, as the circuit court found, a separate issue. Even if Maggie had alleged in her complaint that Clayborn made a false representation regarding properly completing the transaction, we agree with Gage's that Maggie has failed to cite any evidence in the record that Clayborn ever made such a representation to Allbright.

IV. *Wrongful Death*

The circuit court found that an action for wrongful death "is derivative in nature from the original tort, and where the underlying tort action is no longer preserved, the wrongful death action is barred as well." *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 475, 199 S.W.3d 45, 48 (2004). Maggie argues that because there is a genuine dispute as to the above claims, the summary judgment on the claim for wrongful death should also be reversed. Because we have found that the above claims were properly dismissed, the circuit court's dismissal of the wrongful-death claim is also affirmed.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Jeff Slaton P.A.*, by: *Jeff Slaton*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Stuart P. Miller, Lindsey C. Vechik*, and *Colt D. Galloway*, for appellee.

9